**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 15 2014, 6:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CHRISTOPHER L. CLERC**
Columbus, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF Q.F., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.03A01-1401-JV-45 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BARTHOLOMEW CIRCUIT COURT
The Honorable Stephen R. Heimann, Judge
Cause No. 03C01-1310-JD-5682

**August 15, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Q.F. appeals his adjudication as a delinquent based upon acts that would constitute class A misdemeanor battery resulting in bodily injury and class B misdemeanor disorderly conduct if committed by an adult. Q.F. presents the following restated issues for review:

1. Did the State present sufficient evidence to support the true finding of battery resulting in bodily injury?

2. Did the victims' in-court identifications of Q.F. constitute a violation of due process?

3. Did the entry of true findings of both battery and disorderly conduct constitute double jeopardy under our state constitution?

We affirm in part, reverse in part, and remand.

The facts favorable to the adjudication follow. Around 8:00 p.m. on October 15, 2013, twenty-year-old Teddy Albertson and two friends, Erik Moody and Jeffery Holmes, were walking a few blocks to a friend's house in Columbus, Indiana. As they turned a corner, they were approached by a group of six or more males, including Q.F. and P.D. Q.F. initiated a confrontation by asking Albertson and his friends if they wanted to fight, while the others were "fanning out" around the three men. *Transcript* at 22. Feeling like there was no way out of the situation, Albertson punched Q.F. Albertson then immediately began "getting punched from like everywhere, all sorts of ways". *Id.* at 10. Everyone began throwing punches. Albertson suffered injuries to both eyes and abrasions on his neck, while Moody received even more severe injuries. Holmes was able to defend himself and remained unharmed.

Because things happened so fast, Albertson could not recall if Q.F. hit him, but he was sure that P.D. struck him at least once in the face. About two hours after the incident,

2

Q.F. provided a voluntary statement to police, in which he admitted involvement in the fight. Q.F. stated that he punched Albertson at least three or four times. When asked by police where he struck Albertson, Q.F. responded: "Like in the face. I really wasn't even paying attention where I hit him". *Id.* at 72.

The State alleged Q.F. to be a delinquent based on acts that would be three counts of battery resulting in bodily injury and one count of disorderly conduct if committed by an adult.[1] At the fact-finding hearing on November 18, 2013, Albertson, Moody, and Holmes testified and identified Q.F. as a participant in the fight, though they could not say whether Q.F. ever struck Albertson. The State, however, presented Q.F.'s admissions to police that he repeatedly struck Albertson. Further, at the delinquency hearing, P.D. testified that Albertson and Q.F. were "going at it". *Id.* at 81.

At the conclusion of the hearing, the juvenile court took the matter under advisement and then issued an order on November 21, 2013. With respect to Q.F., the court found that he had committed the following delinquent acts: "Battery Resulting In Bodily Injury, a Class A Misdemeanor (as it relates to Teddy Albertson) [and] Disorderly Conduct, a Class B Misdemeanor." *Appendix* at 13. Following the dispositional hearing on December 11, 2013, the court ordered Q.F. confined for ninety days in a secure detention facility. Q.F. now appeals.

1.

---

[1] The State made the same allegations against A.D., who was tried with Q.F.

Q.F. initially challenges the sufficiency of the evidence regarding the true finding of battery resulting in serious bodily injury. Our standard of review in this regard is well settled.

> When the State seeks to have a juvenile adjudicated to be a delinquent for committing an act which would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. Upon review of a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment. We will neither reweigh the evidence nor judge witness credibility. If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the adjudication.

*J.S. v. State*, 843 N.E.2d 1013, 1016 (Ind. Ct. App. 2006) (citations omitted), *trans. denied*.

At the time of Q.F.'s delinquent act, class A misdemeanor battery was defined, in relevant part, as "knowingly or intentionally touch[ing] another person in a rude, insolent, or angry manner…result[ing] in bodily injury to any other person". Ind. Code Ann. § 35-42-2-1 (West, Westlaw 2013).

Q.F. claims the evidence was insufficient because none of the three victims testified that he punched anyone. While Q.F. acknowledges that he admitted to police that he punched Albertson several times, he claims the State failed to establish a connection between these punches and any injury or pain being caused to Albertson. In other words, Q.F. argues that Albertson's injuries could have "just as easily" been caused by one of the other males in Q.F.'s group. *Appellant's Brief* at 5.

We reject Q.F.'s request to reweigh the evidence. The evidence favorable to the adjudication establishes that Q.F. instigated the fight and punched Albertson at least three to four times, including in the face. Although Albertson was likely struck by others too,

4

the trier of fact could reasonably infer that at least some of Albertson's injuries and pain was caused by Q.F.[2] Sufficient evidence supports the true finding of battery causing bodily injury.

2.

Q.F. contends that the in-court identifications of him violated due process because "they were tainted by an unduly suggestive pre-trial confrontation and no independent factual basis exists independent of the pre-trial confrontation." *Appellant's Brief* at 6. This issue is waived because Q.F. did not object to this evidence below. *See Shoultz v. State*, 995 N.E.2d 647, 654 (Ind. Ct. App. 2013) ("failure to make a contemporaneous objection to evidence when it is offered waives any claim of error in its admission on appeal"), *trans. denied*. Moreover, any error in the admission of the identification evidence, which placed Q.F. at the scene, was harmless due to Q.F.'s own admission of involvement in the fight. *See Willis v. State*, 776 N.E.2d 965, 967 (Ind. Ct. App. 2002) ("[w]e do not reverse judgments based upon harmless errors in the admission of evidence", such as where the evidence "was merely cumulative of other evidence properly admitted").

3.

Finally, Q.F. contends that the true findings entered for both battery and disorderly conduct violate principles of double jeopardy under the Indiana Constitution. He claims

---

[2] We note that accomplice liability would apply here, even if Q.F. did not directly cause the injuries to Albertson. "The evidence need not show that the accomplice personally acted in the commission of each element of the offense. It is only necessary to show that the accomplice acted in concert with the actor". *Rivera v. State*, 575 N.E.2d 1072, 1074 (Ind. Ct. App. 1991), *trans. denied*.

there is a reasonable possibility that the juvenile court used the same evidence to establish both offenses.

Two or more offenses are the same offense in violation of article 1, section 14 of the Indiana Constitution if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999). Under the actual evidence test, we examine the evidence and arguments presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. *Id. See also Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008) ("[i]n determining the facts used by the fact-finder to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel"). To find a double jeopardy violation under this test, we must conclude there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson v. State,* 717 N.E.2d at 53.

The State essentially concedes that a double jeopardy violation exists, noting that "the deputy prosecutor specifically asked the court to find disorderly conduct based on the act of fighting." *Appellee's Brief* at 9. In fact, the thrust of the State's closing argument

6

was that disorderly conduct was an available alternative to battery if the juvenile court found that the batteries were not sufficiently established.[3]

On the record before us, we agree that entering true findings of both battery and disorderly conduct violates Indiana constitutional double jeopardy principles. *See D.B. v. State*, 842 N.E.2d 399 (Ind. Ct. App. 2006) (holding that juvenile adjudications can implicate double jeopardy). Accordingly, we remand with instructions to vacate Q.F.'s true finding of disorderly conduct. We note, however, that the adjudication of delinquency is unaffected, as it is supported by the true finding of battery resulting in bodily injury, which we have affirmed.

Judgment affirmed in part, reversed in part, and remanded with instructions.

VAIDIK, C.J., and MAY, J., concur.

---

[3] The prosecutor explained:

> I would just also remind the Court that both individuals are charged with disorderly conduct, as well. So, even if the evidence isn't necessarily, oh we know beyond a reasonable doubt that this person hit this victim, under the disorderly conduct, as long as the Court finds beyond a reasonable doubt that they were engaging in fighting or tumultuous conduct, that was [sic] suffice without, you know, having to specify which victim was hit by one specific individual….So, I think, especially, with regard to disorderly conduct against [Q.F.], it's very clear. He admits he was involved in the fight.

*Transcript* at 94-95.